IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:23-CV-87-D

| | | |
|---|---|---|
| DAN WAGNER and PHYLLIS CHEESEMAN, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | O R D E R |
| NORCOLD, INC., *et al.*, | ) ) | |
| Defendants. | ) ) | |

This matter is before the court on Defendants' motions to compel written discovery and for entry of protective orders. [DE-56, -58]. Plaintiffs oppose both motions. [DE-60, -63]. For the reasons that follow, Defendants' motion to compel is allowed in part and denied in part, and the motion for entry of protective orders is granted.

## I.    Background

Plaintiffs Dan Wagner and Phyllis Cheeseman ("Wagner" and "Cheeseman" or collectively, "Plaintiffs") brought this action against Defendants Norcold, Inc. ("Norcold"), Thetford Corporation ("Thetford"), and Dyson-Kissner-Moran Corporation ("DKM") (collectively, "Defendants") for defective design and negligence after a Series 1210 Norcold refrigerator (the "subject refrigerator"), which was installed in a 2003 Fleetwood Discovery RV parked on Cheeseman's property, allegedly caught fire on November 24, 2022, destroying Wagner's motorcycle repair shop, which was located inside of one of Cheeseman's outbuildings. Compl. [DE-1] ¶¶ 11–19. Plaintiffs contend that the subject refrigerator is one of many allegedly defective gas absorption refrigerators that Defendants have sold since 1996 (namely, the N6, N8,

and 1200 Series refrigerators), all of which share common cooling unit technology that is prone to catching fire. *Id.* ¶¶ 20–32. According to Plaintiffs, Norcold issued several voluntary recalls for its various refrigerator models because of this shared technology and fire risk between 2000 and 2010, and over 3,000 Norcold refrigerator-related fires have been reported in the past fifteen years. *Id.* ¶¶ 22–28. Notably, the subject refrigerator was not under recall at the time of the fire and Plaintiffs assert that all previous cooling unit recall work was completed in 2011. *Id.* ¶¶ 14–16. However, Plaintiffs contend that fires involving Norcold refrigerators are "still occurring even though recall work has been performed, including recall work associated with the High Temperature Sensor (HTS) installation [which was performed on the subject refrigerator in 2011]." *Id.* ¶ 27.

The parties have had several discovery disputes requiring court involvement throughout the course of the litigation. [DE-26, -37, -40, -50]. Most recently, on May 24, 2024, the court issued an order that, *inter alia*, granted in part and denied in part two of Plaintiffs' motions to compel. [DE-55]. As relevant here, in addressing Plaintiffs' written discovery requests and noticed deposition topics, the order imposed a three-year limitation on Defendants' responses to Plaintiffs' Interrogatory No. 14, subparts 6 and 7; Defendants' responses to Plaintiffs' Requests for Production of Documents ("RFP") Nos. 9, 42, 46, 47–48, 110–12, and 114; and Defendants' expert testimony at deposition. *Id.* at 16, 23, 26. The order also allowed Defendants fourteen days to file a motion for a protective order to govern the disclosure of any confidential information and/or mitigate the burden of production prior to producing any responsive documents. *Id.* at 23. Defendants timely filed the instant motion for entry of protective orders on June 7, 2024, [DE-56], and shortly thereafter filed their first motions to compel, [DE-58, -61]. Defendants later withdrew their motion to compel the depositions of Plaintiffs, Kathie McGregor, and Plaintiffs' retained experts, [DE-67], thus the only motion to compel that remains at issue pertains to written

2

discovery, [DE-58]. The discovery period is currently set to conclude on September 20, 2024. [DE-69].

## II.    Analysis

### i.    Defendants' Motion to Compel

Defendants seek an order from the court overruling many of Plaintiffs' first amended objections to Defendants' written discovery and ordering Plaintiffs to serve adequate responses to Defendants' interrogatories and produce all documents responsive to Defendants' RFPs. Defs.' Mem. [DE-59] at 7–11. Defendants also seek an award of their costs and fees associated with bringing the motion. *Id.* at 1, 11. In support, Defendants attached several exhibits to the motion, including a declaration of Defendants' counsel, Todd Foss; correspondence between counsel; and Plaintiffs' initial and first amended discovery responses. [DE-59-1 to -11]. Plaintiffs oppose the motion and attached several exhibits of their own, including Wagner and Cheeseman's second amended responses to Defendants' interrogatories and RFPs; Wagner and Cheeseman's responses to Defendants' first requests for admission ("RFAs"); and email correspondence enclosing the same. [DE-63-1 to -18].

> Rule 26 provides the general rule regarding the scope of discovery:
>
> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). "Relevancy under this rule has been broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any party." *Prasad v. Nallapati*, 597 F. Supp. 3d 842, 846 (E.D.N.C. 2022) (first quoting *Equal Emp't*

3

*Opportunity Comm'n v. Sheffield Fin. LLC*, No. 1:06-CV-889, 2007 WL 1726560, at \*3 (M.D.N.C. June 13, 2007); then citing *Mainstreet Collection, Inc. v. Kirkland's, Inc.*, 270 F.R.D. 238, 240 (E.D.N.C. 2010) ("During discovery, relevance is broadly construed 'to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'") (quoting *Oppenheimer Fund., Inc. v. Sanders*, 437 U.S. 340, 351 (1978))). "A party seeking discovery may move for an order compelling an answer, designation, production, or inspection" if a party fails to answer an interrogatory or to produce or make available for inspection requested documents. Fed. R. Civ. P. 37(a)(3)(B)(iii), (iv).

For purposes of a motion to compel, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). However, the Federal Rules also provide that the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1). Fed. R. Civ. P. 26(b)(2)(C). "Additionally, the court has 'substantial discretion' to grant or deny motions to compel discovery." *English v. Johns*, No. 5:11-CT-3206-D, 2014 WL 555661, at \*4 (E.D.N.C. Feb. 11, 2014) (quoting *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 929 (4th Cir. 1995)). Finally, the party seeking the court's protection from responding to discovery "must make a particularized showing of why discovery should be denied, and conclusory or generalized statements fail to satisfy this burden as a matter of law." *Prasad*, 597 F.3d at 846 (quoting *Mainstreet Collection*, 270 F.R.D. at 240).

4

### 1. Interrogatories

Defendants ask the court to strike Wagner's first amended objections to Norcold's Interrogatory Nos. 12, 14, 17, and 19–22 and Cheeseman's first amended objections to Norcold's Interrogatory Nos. 5, 7, 11, and 12–15, as well as both Plaintiffs' first amended answers to Thetford and DKM's respective Interrogatory Nos. 2–15, and to compel Plaintiffs to further supplement their responses. Defs.' Mem. [DE-59] at 7–9. Defendants contend that Plaintiffs' existing responses to the indicated interrogatories are rife with boilerplate, unsupported objections and fail to provide any actual substantive answers to interrogatories seeking information that is directly relevant to Plaintiffs' case and Defendants' defenses. *Id.*

Boilerplate objections without support are disfavored and may be stricken by the court. *Daniels v. Hyster-Yale Grp., Inc.*, No. 5:19-CV-00531-FL, 2020 WL 2334088 at *4 (E.D.N.C. May 11, 2020) (citing *Kinetic Concepts, Inc. v. ConvaTec, Inc.*, 268 F.R.D. 226, 241 (M.D.N.C. 2010) ("[M]agistrate judges in at least five district courts in the Fourth Circuit have declared boilerplate objections to discovery requests . . . invalid."); *Hy-Ko Prods. Co. v. Hillman Grp., Inc.*, No. 5:09-MC-00032, 2009 WL 3258603, at *2 (E.D.N.C. Oct. 8, 2009) ("Generally, the mere cry of burdensomeness or irrelevance without any statement in support of these objections is disfavored by the court."); *Silicon Knights, Inc. v. Epic Games, Inc.*, 917 F. Supp. 2d 503, 533 (E.D.N.C. 2012) (granting motion to compel where plaintiff's responses to defendant's interrogatories and requests for production "comprise[d] nothing but a laundry list of boilerplate objections" and "failed to articulate any specific objection to any particular interrogatory or request for production")).

In their response, Plaintiffs do not address Defendants' allegations that their first amended responses to Defendants' first set of interrogatories contained boilerplate objections. Instead,

5

Plaintiffs generally aver that Defendants already have the information they are seeking through most of the indicated interrogatories. Pls.' Resp. [DE-63] at 2–7. In support, Plaintiffs draw the court's attention to documents Plaintiffs previously produced in discovery, as well as Wagner and Cheeseman's second amended responses to Defendants' first set of interrogatories, which were served days after the instant motion was filed, on July 3, 2024. *Id.* Plaintiffs also argue that the remainder of Defendants' flagged interrogatories are improper and should be stricken. *Id.*

a. **Wagner's Second Amended Responses to Norcold's Interrogatory Nos. 12 and 14, Thetford's Interrogatory No. 15, and DKM's Interrogatory No. 15, and Cheeseman's Second Amended Responses to Norcold's Interrogatory Nos. 5 and 7, Thetford's Interrogatory No. 15, and DKM's Interrogatory No. 15**

Plaintiffs indicate that they have cured the alleged deficiencies found in Wagner's first amended responses to Norcold's Interrogatory Nos. 12 and 14, Thetford's Interrogatory No. 15, and DKM's Interrogatory No. 15,[1] as well as Cheeseman's first amended responses to Norcold's Interrogatory Nos. 5 and 7, Thetford's Interrogatory No. 15, and DKM's Interrogatory No. 15, via their second amended answers to Defendants' interrogatories. Pls.' Resp. [DE-63] at 2–7. After reviewing Plaintiffs' respective second amended answers to the above-listed interrogatories, [DE-63-3 to -63-6, -63-8], and comparing these responses to the earlier first amended responses, [DE-59-5, -59-7], the court does not agree that all alleged deficiencies have been resolved.

In their second amended answers, Plaintiffs responded to Defendants' requests for information pertaining to Plaintiffs' claimed losses and damages by providing slight variations of the following answer:

> Objection: Plaintiff objects to this request as overly broad, unduly burdensome and harassing. Plaintiff objects that this information is not relevant or proportional to the needs of this case (both of which are required by the Rules), specifically in that the information sought is irrelevant to the claims made in this lawsuit and are not important to resolving the issues in the case.

---

[1] Plaintiffs do not mention Wagner's answer to DKM's Interrogatory No. 15 in their response. However, both the objection and response provided are substantially similar to that depicted in this section. *See* [DE-63-7] at 10.

> Answer: Subject to and without waiving the foregoing and general objections, Plaintiff answers as follows: Plaintiffs' claimed losses are itemized on the spreadsheet Bates numbered Wagner_00024–Wagner_000428. These items were destroyed in the fire made the subject of this lawsuit. Other documents supporting Plaintiffs' losses are included in the documents previously produced as Bates numbers 1–423.

Wagner's Second Am. Resps. to Norcold's Interrog. Nos. 12, 14 [DE-63-3] at 9–10;[2] Cheeseman's Second Am. Resps. to Norcold's Interrog. Nos. 5, 7 [DE-63-4] at 6–7; Wagner's Second Am. Resps. to Thetford's Interrog. No. 15 [DE-63-5] at 10; Wagner's Second Am. Resps. to DKM's Interrog. No. 15 [DE-63-7] at 10; Cheeseman's Second Am. Resps. to Thetford's Interrog. No. 15 [DE-63-6] at 10; Cheeseman's Second Am. Resps. to DKM's Interrog. No. 15 [DE-63-8] at 10.

As an initial matter, the court finds the information requested is within the scope of discovery under Fed. R. Civ. P. 26(b)(1), and that Plaintiffs' objections are boilerplate, *Hy-Ko Prods. Co.*, WL 3258603, at \*2. Turning to the substance of Plaintiffs' responses, Federal Rule of Civil Procedure 33(b)(3) requires that each interrogatory be answered "separately and fully." This requirement has been interpreted "to exclude answering by reference to other documents such as pleadings, depositions, or other discovery responses," i.e., the Rule excludes the exact kind of answers that Plaintiffs have given here. *Eshelman v. Puma Biotechnology, Inc.*, No. 7:16-CV-18-D, 2018 WL 1702773, at \*10 (E.D.N.C. Apr. 6, 2018) (quoting *Patten v. Hall*, No. 5:15-CT-3118-FL, 2017 WL 6062258, at \*3 (E.D.N.C. Dec. 7, 2017)); *Anderson v. Caldwell Cnty. Sheriff's Off.*, No. 1:09cv423, 2011 WL 2414140, at \*4 (W.D.N.C. June 10, 2011) ("The general rule is that an answer to an interrogatory should not refer to other documents such as pleadings, depositions, or other interrogatories, but should be complete in itself.").

---

[2] This order refers to the CM/ECF footer page number where, as here, that number differs from the document's internal pagination.

While Rule 33(d) allows a party to answer an interrogatory by referring to a record where the answer may be found, the responding party must "(1) specify [ ] the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and (2) giv[e] the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries." Here, Plaintiffs have failed to meet these requirements, as they specifically reference the itemized spreadsheet found between a narrow Bates range but also base part of their response on a much broader range of unidentified previously produced documents. *See Patten*, 2017 WL 6062258, at \*3 ("Defendants may not simply point to the 10,000 plus documents produced by DPS and expect Plaintiffs to dig out the interrogatory answers."). Accordingly, the motion to compel is granted with respect to Norcold's Interrogatory Nos. 12 and 14, Thetford's Interrogatory No. 15, and DKM's Interrogatory No. 15 as served on Wagner, and Norcold's Interrogatory Nos. 5 and 7, Thetford's Interrogatory No. 15, and DKM's Interrogatory No. 15 as served on Cheeseman. Plaintiffs shall supplement their responses by no later than September 27, 2024.

b. **Wagner's Second Amended Responses to Norcold's Interrogatory Nos. 19–22, Thetford's Interrogatory Nos. 2–13, and DKM's Interrogatory Nos. 2–13, and Cheeseman's Second Amended Responses to Norcold's Interrogatory Nos. 12–15, Thetford's Interrogatory Nos. 2–13, and DKM's Interrogatory Nos. 2–13**

With respect to Wagner's second amended responses to Norcold's Interrogatory Nos. 19–22, Thetford's Interrogatory Nos. 2–13, and DKM's Interrogatory Nos. 2–13, as well as Cheeseman's second amended responses to Norcold's Interrogatory Nos. 12–15, Thetford's Interrogatory Nos. 2–13, and DKM's Interrogatory Nos. 2–13, Plaintiffs generally claim that they have fully responded via their prior document productions, but also that "these interrogatories call

8

for expert testimony and the depositions of [Plaintiffs' experts] are being scheduled in the coming weeks."[3] Pls.' Mem. [DE-63] at 3–6.

Upon review, the above-indicated interrogatories are contention interrogatories, i.e., interrogatories permitted by the Federal Rules of Civil Procedure that "ask[] for an opinion or contention that relates to fact or the application of law to fact[.]" Fed. R. Civ. P. 33(a)(2). Contention interrogatories ask a party to do one or more of the following: "(1) state its contentions or clarify whether it is making a contention, (2) articulate the facts underlying a contention, (3) assert a position or explain that position in relation to how the law applies to the facts, and (4) explain the legal or theoretical basis behind a contention." *Johnson v. N.C. Dep't of Justice*, No. 5:16-CV-00679-FL, 2018 WL 5831997, at *7 (E.D.N.C. Nov. 7, 2018) (quoting *Capacchione v. Charlotte-Mecklenburg Schs.*, 182 F.R.D. 486, 489 (W.D.N.C. 1998)). As relevant here, the court finds the information requested by these contention interrogatories is within the scope of discovery under Fed. R. Civ. P. 26(b)(1).

Plaintiffs responded to most of these interrogatories, which broadly seek the factual bases supporting the allegations made in the complaint, with a variation of the following answer:

> Objection: Plaintiff objects to this request as overly broad, unduly burdensome and harassing. Plaintiff objects that this information is not relevant or proportional to the needs of this case (both of which are required by the Rules), specifically in that the information sought is irrelevant to the claims made in this lawsuit and are not important to resolving the issues in the case.

> Answer: Subject to and without waiving the foregoing and general objections, Plaintiff refers Defendant to the Settlement Demand package submitted to Defendants on June 20, 2023, and to the reports and files of Plaintiff's experts, including Jeff Key and Ivan Collins. Plaintiff further refers Defendants to documents and testimony provided by Defendants in the course of discovery. Plaintiff will supplement this answer to the extent responsive information is obtained.

---

[3] Notably, Plaintiffs did not amend their responses to interrogatories within this category in their second amended responses to Defendants' written discovery. However, this order references the second amended responses as they are the most current.

Wagner's Second Am. Resps. to Norcold's Interrog. Nos. 20, 21 [DE-63-3] at 12–13; Cheeseman's Second Am. Resps. To Norcold's Interrog. Nos. 13–14 [DE-63-4] at 8–9; Wagner's Second Am. Resps. to Thetford's Interrog. Nos. 2–12 [DE-63-5] at 5–9; Cheeseman's Second Am. Resps. to Thetford's Interrog. Nos. 2–12 [DE-63-6] at 5–9; Wagner's Second Am. Resps. to DKM's Interrog. Nos. 2–12 [DE-63-7] at 5–9; Cheeseman's Second Am. Resps. to DKM's Interrog. Nos. 2–12 [DE-63-8] at 5–9.

As for the remaining interrogatories in this category, Plaintiffs offered a substantially similar objection but responded by referring Defendants to various produced and otherwise discoverable documents by blanket category, for example, "[a]ll recalls for the subject refrigerator and similar refrigerators," and "[a]ll other reports and files of Plaintiff's experts, including Jeff Key and Ivan Collins, including their deposition testimony if deposed." Wagner's Second Am. Resps. to Norcold's Interrog. Nos. 19, 22 [DE-63-3] at 12–14; Cheeseman's Second Am. Resps. To Norcold's Interrog. Nos. 12, 15 [DE-63-4] at 8–10; Wagner's Second Am. Resps. to Thetford's Interrog. No. 13 [DE-63-5] at 9; Cheeseman's Second Am. Resps. to Thetford's Interrog. No. 13 [DE-63-6] at 9; Wagner's Second Am. Resps. to DKM's Interrog. No. 13 [DE-63-7] at 9; Cheeseman's Second Am. Resps. to DKM's Interrog. No. 13 [DE-63-8] at 9.

The court finds that Plaintiffs' objections are boilerplate, *Hy-Ko Prods. Co.*, WL 3258603, at \*2, and that their responses are insufficient notwithstanding their attempts to amend them. As previously explained *supra*, Rule 33(b)(3) has been interpreted to exclude the exact kind of answers given by Plaintiffs here, i.e., answers that solely reference other documents external to the interrogatories themselves. *See* § II.i.1.a. Moreover, presuming that Plaintiffs' counsel complied with Rule 11, there must be some factual support for the allegations raised in the complaint. When an attorney signs and files a complaint with the court, the attorney is certifying, among other things,

that "to the best of the [attorney's] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the claims [ ] and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law," Fed. R. Civ. P. 11(b)(2), and "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery," *id.* at (b)(3). In light of Rule 11's requirements, it is reasonable to expect that Plaintiffs would be able to provide some kind of narrative response to the above-indicated interrogatories, despite the fact that expert depositions are pending. This point is made all the more salient by the fact that merely stating that a party may obtain more specific information via deposition is inadequate. *Brock v. Hooker Chemical & Plastics Corp.*, No. 83 C 8383, 1985 WL 2120, at \*1 (N.D. Ill. July 24, 1985) ("an answer to an interrogatory is improper if it merely refers to answers to other interrogatories, and an answer which states that the information may be obtained by deposition is insufficient"); *Matalavage v. Sheriff of Niagara Cnty.*, 20-CV-1254Sk(F), 2023 WL 2043865, at \*8 (W.D.N.Y. Feb. 13, 2023). Accordingly, Defendants' motion to compel is allowed with respect to Norcold's Interrogatory Nos. 19–22, Thetford's Interrogatory Nos. 2–13, and DKM's Interrogatory Nos. 2–13 as served on Wagner, and Norcold's Interrogatory Nos. 12–15, Thetford's Interrogatory Nos. 2–13, and DKM's Interrogatory Nos. 2–13 as served on Cheeseman. Plaintiffs shall supplement their responses by no later than September 27, 2024.

    **c. Wagner's Second Amended Responses to Norcold's Interrogatory No. 17, Thetford's Interrogatory No. 14, and DKM's Interrogatory No. 14, and Cheeseman's Second Amended Responses to Norcold's Interrogatory No. 11, Thetford's Interrogatory No. 14, and DKM's Interrogatory No. 14**

Plaintiffs argue that the following interrogatories are improper and should be stricken: Norcold's Interrogatory No. 17 as served on Wagner, Norcold's Interrogatory No. 11 as served on

11

Cheeseman, Thetford's Interrogatory No. 14 as served on both Plaintiffs, and DKM's Interrogatory No. 14 as served on both Plaintiffs. Pls.' Resp. [DE-63] at 2–7. Specifically, Plaintiffs contend that these interrogatories are "abusive and would require Plaintiff[s] to answer what is in effect more than 25 interrogatories." *Id.*

Every one of the above-listed interrogatories are substantially identical, stating, "For each one of your responses to [specific Defendant]'s First Request for Admission to Plaintiff that were not unequivocal admissions, please state the factual bases for your denials, non-admissions, and/or inability or failure to admit." Wagner's Second Am. Resps. to Norcold's Interrog. No. 17 [DE-63-3] at 11; Cheeseman's Second Am. Resps. To Norcold's Interrog. No. 11 [DE-63-4] at 8; Wagner's Second Am. Resps. to Thetford's Interrog. No. 14 [DE-63-5] at 10; Cheeseman's Second Am. Resps. to Thetford's Interrog. No. 14 [DE-63-6] at 10; Wagner's Second Am. Resps. to DKM's Interrog. No. 14 [DE-63-7] at 9–10; Cheeseman's Second Am. Resps. to DKM's Interrog. No. 14 [DE-63-8] at 10. Plaintiffs responded with the following:

> Objection: Plaintiff objects to this request as overly broad, unduly burdensome and harassing. Plaintiff objects that this information is not relevant or proportional to the needs of this case (both of which are required by the Rules), specifically in that the information sought is irrelevant to the claims made in this lawsuit and are not important to resolving the issues in the case. Plaintiff further objects to this request as it seeks information that is not limited to the facts or claims asserted in the instant case.

> Answer: Subject to and without waiving the foregoing and general objections, Plaintiff answers as follows: Interrogatory No. [x] requires Plaintiff to provide responses that exceed the limit of 25 interrogatories under FRCP 33.

*Id.* In their motion, Defendants counter that Plaintiffs' answers are inappropriate, and argue that their objections should be overruled because each Defendant only served twenty-four interrogatories on each Plaintiff. Defs.' Mem. [DE-59] at 8.

12

The court agrees that these interrogatories as written are overbroad and exceed the number of interrogatories permitted by the Federal Rules. *See Certain Interested Underwriters Subscribing to Pol'y No. B1262PW0017013 v. Am. Realty Advisors*, No. 5:16-CV-940-FL, No. 5:17-CV-74-FL, 2018 WL 4765157, at *5 (E.D.N.C. Sept. 30, 2018); *Rawl v. S.C. Dep't of Soc. Servs.*, No. 2:14-CV-02772-DCN, 2015 WL 6725169, at *2 (D.S.C. 3 Nov. 2015) (holding that interrogatory seeking "complete legal and factual basis" for each denial to a request for admission was considered to be sixty-nine separate interrogatories because there were sixty-nine separate denials); *Stevens v. Federated Mut. Ins. Co.*, No. 5:05-CV-149, 2006 WL 2079503, at *6 (N.D.W. Va. 25 July 2006) (holding that interrogatory seeking detailed information about eleven requests for admission could not be considered a single interrogatory); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, No. 1:00CV00113, 2002 WL 534459, at *3 (W.D. Va. 18 Mar. 2002) (holding that interrogatory based on responses to requests for admission should be treated as separate interrogatories). Accordingly, Defendants' request to compel responses to the interrogatories in this category is denied.

## 2. RFPs

Defendants move to compel the production of documents requested from Wagner in Norcold's RFP Nos. 1–3, 9, 12–13, 15–25, 27, 29, 31, 35–38, 41–45, 52–62, 64–66, 69–70, 73–74, 78, 81–83, 88, and 93, Thetford's RFP Nos. 1–26, and DKM's RFP Nos. 1–26, as well as documents requested from Cheeseman in Norcold's RFP Nos. 1–5, 7, 10–23, 25, 27, 31, 35, 42, 44, and 48, Thetford's RFP Nos. 1–26, and DKM's RFP Nos. 1–26. Defs.' Mem. [DE-59] at 9–11. Defendants contend that Plaintiffs' first amended responses to these requests are improper because they either simply reference a Settlement Demand package without identifying any particular documents by Bates number or reference "'all discovery and documents produced in

other litigation involving Norcold relating to fires alleged to have been caused by the subject refrigerator and similar refrigerators,' but no such materials were produced." *Id.*

In their response, Plaintiffs claim to have identified documents that are responsive to some of Defendants' requests by Bates number via their second amended responses to Norcold's RFPs. Pls.' Resp. [DE-63] at 7–8. Plaintiffs did not amend or supplement their initial responses to Thetford and DKM's RFPs and have not attempted to explain why these responses are adequate. [DE-71]; *see* Pls.' Resp. [DE-63] at 7–8.

### a. Plaintiffs' Second Amended Responses to Norcold's RFPs

In their response, Plaintiffs claim to have rectified some of the alleged deficiencies noted by Defendants by amending their answers to Norcold's RFP Nos. 3, 15–22, 25, 27, 29, 31, 35–38, 41–45, 52–62, 64–66, 69–70, 73–74, 78, and 81 as propounded to Wagner, and Norcold's RFP Nos. 3, 5, 7, 10–19, 21–23, 25, 27, and 48 as propounded to Cheeseman. Pls.' Resp. [DE-63] at 7–8. Plaintiffs offer various objections in their second amended responses to RFP Nos. 3, 18, 27, 29, 31, 35, 36, 38, 42, 44–45, 52–61, 69–70, 73–74, 78, and 81 as served on Wagner, and RFP Nos. 3, 7, 10–19, 21–23, 25, 27, and 48 as served on Cheeseman, including work product and attorney-client privilege. Pls.' Resp. Ex. I [DE-63-9]; Pls.' Resp. Ex. J [DE-63-10]. Plaintiffs also contend that some of these requests are vague and overbroad, "seek[] an expert opinion that Plaintiff is not qualified to give," and/or "seek[] information [that] is in Defendants' possession, custody, or control and has not yet been produced to Plaintiffs in this case although documents have been requested concerning these claims." *Id.*

Objections to requests for production of documents must "state with specificity the grounds for objecting to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B). An objecting party must also "state whether any responsive materials are being withheld on the basis of that

14

objection," and any ground not stated in an objection is considered waived. *Id.* 34(b)(2)(C). Thus, while it is unclear whether Plaintiffs have withheld any responsive documents based on their objections, to the extent that they have done so, this is inappropriate, and their responses should be supplemented. Moreover, to the extent that Plaintiffs claim that documents requested by Defendants in the instant motion are protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege, they should so indicate in a privilege log that comports with Fed. R. Civ. P. 26(b)(5).

> Turning to the responses themselves, Plaintiffs offer nearly identical answers to each RFP:

> Subject to the foregoing objections and without waiving same, Plaintiff refers you to the documents produced to Defendant and Bates numbered Wagner_000001– Wagner_0000428. Plaintiff will supplement this response to the extent relevant, and discoverable items are identified and obtained as the discovery process continues.

Wagner's Second Am. Resps. to Norcold's RFP Nos. 3, 15–22, 27, 29, 31, 35–38, 41–45, 52–61, 73, 81 [DE-63-9] at 5–27; Cheeseman's Second Am. Resps. to Norcold's RFP Nos. 3, 5, 7, 10– 18, 48 [DE-63-10] at 5–19. Some of their responses include more specific references to documents found in narrowed Bates ranges, attachments, incident reports, county property records, and/or expert reports, though most of these references are paired with a citation to the broader Bates range containing over four hundred documents.[4] Wagner's Second Am. Resps. to Norcold's RFP Nos. 15–17, 19–22, 27, 29, 31, 35–38, 43–45, 52–62, 64–66, 74, 78, 81 [DE-63-9] at 5–27; Cheeseman's Second Am. Resps. to Norcold's RFP Nos. 5, 7, 10–19, 21–23, 25, 27, 48 [DE-63-10] at 5–19. Wagner's responses to Norcold's RFP Nos. 52–61 and Cheeseman's responses to

---

[4] Based on Wagner's response to Norcold's RFP No. 69, it appears that Plaintiffs have amended many of their previous answers, which referred to "the Settlement Demand package submitted to Defendants on June 20, 2023," by simply including the Bates number range for said Settlement Demand package. *Compare* [DE-59-6], *with* [DE-63-9]. Defendants previously objected to this blanket reference to the Settlement Demand package by stating that these responses "do not identify any particular documents, including any documents formally produced in response to Defendants' requests." Defs.' Mem. [DE-59] at 10.

Norcold's RFP Nos. 10–18 additionally reference "all discovery and documents produced in other litigation involving Norcold relating to fires alleged to have been caused by the subject refrigerator and similar refrigerators." [DE-63-9] at 17–23; [DE-63-10] at 7–12.

In the absence of a specific argument made by Defendants regarding Plaintiffs' second amended responses, the court notes that Rule 34 requires that a party produce documents "as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request[.]" Fed. R. Civ. P. 34(b)(2)(E). The party choosing to provide documents as kept in the usual course of business—as opposed to labeling them to correspond to the categories in the request—bears the burden of showing that the documents were properly produced. *Trident Atlanta, LLC v. Charlie Graingers Franchising, LLC*, No. 7:18-cv-10-BO, 2020 WL 818952, at *2 (E.D.N.C. Feb. 18, 2020) (citing *S.E.C. v. Collins & Aikman Corp.*, 256 F.R.D. 403 (S.D.N.Y. 2009)).

Here, Plaintiffs have not attempted to justify their citation to a collection of over four hundred documents, and given the scope of Defendants' RFPs, it is difficult to imagine how this entire range of documents corresponds to each of the indicated requests—particularly where Defendants have previously stated that a blanket reference to the entire Settlement Demand package does not apprise them of what documents are responsive to each request, Pls.' Mem. [DE-59] at 10. Additionally, to the extent that Plaintiffs attempt to reference discovery and documents produced in other litigation, this answer is plainly nonresponsive, as documents produced in other cases are not documents that have been produced in the current one. Accordingly, Plaintiffs are directed to supplement their responses so that they comply with Rule 34 by no later than September 27, 2024, either by identifying specific documents that correspond with each RFP or by explaining why they are unable to do so.

### b. Plaintiffs' First Amended Responses to Norcold's RFPs

Plaintiffs continue to rely on their first amended responses and objections to Norcold's RFP Nos. 1–2, 9, 12–13, 23–24, 82–83, 88, and 93 as propounded to Wagner, and Norcold's RFP Nos. 1–2, 4, 20, 31, 35, 42, and 44 as propounded to Cheeseman. *See* Pls.' Resp. [DE-63] at 7–8. Defendants maintain that all of the indicated RFPs "seek information relevant to the parties' claims and defenses and are tailored to the issues in this suit, including information about Plaintiffs, the RV, the RV owner (Terry Schweigert), the Norcold refrigerator in the RV, the subject fire, Plaintiffs' property allegedly damaged in the fire (including items of personal property and a building), and Plaintiffs' claims and allegations made in this lawsuit." Defs.' Mem. [DE-59] at 10. Furthermore, Defendants contend that Plaintiffs' objections are boilerplate and without merit. *Id.*

Plaintiffs' objections to the above-listed RFPs fail to provide any sort of factual support for their repeated assertion that Defendants' RFPs are, *inter alia*, vague and overbroad; thus, the court finds that Plaintiffs have waived these objections and will not consider them in evaluating the substance of their responses. *See Daniels*, 2020 WL 2334088 at *4. Turning first to RFP Nos. 1 and 2, these requests ask both Wagner and Cheeseman to produce color copies of the front and back of their current driver's licenses, as well as color copies of the front and back of their Social Security cards, respectively. [DE-63-9] at 5; [DE-63-10] at 5. Plaintiffs responded to RFP No. 1 by directing Defendants to their answers to interrogatories providing identifying information and responded to RFP No. 2 by stating that they are "not making a claim for loss of earnings." *Id.* The court finds that Plaintiffs' answers are nonresponsive, particularly because Defendants are entitled to explore Plaintiffs' identifying information to ensure they do in fact have all such information and that the information is correct. *See Pickett v. Experian Info. Sols., Inc.*, No: 5:15-CV-52-F,

17

2015 WL 7761075, at *2, 4 (E.D.N.C. Dec. 2, 2015). Accordingly, Plaintiffs shall produce these documents by no later than September 27, 2024.

Plaintiffs provided substantially identical responses to the remaining RFPs, which request production of the following documents: photographs and/or video recordings of "the Building and/or the Other Property taken before the Fire," Cheeseman RFP No. 4 [DE-63-10] at 5; documents reflecting the identity of the owner of the RV at the time of the subject fire, Wagner RFP No. 9 [DE-63-9] at 6; communications exchanged between Wagner and the owner of the RV, Terry Schweigert, relating to the RV both prior to and after the date of the subject fire, Wagner RFP Nos. 12, 13 [DE-63-9] at 7; bills, receipts, invoices, statements, and/or other documents reflecting all amounts paid to repair or replace items allegedly damaged or destroyed by the fire, Cheeseman RFP No. 20 [DE-63-10] at 13; diagrams reflecting the layout of the interior of the building and items within it at the time of the fire, Wagner RFP Nos. 23–24 [DE-63-9] at 9; documents "reflecting efforts, if any, by Plaintiff to mitigate damages allegedly resulting from the Fire," Cheeseman RFP No. 31 [DE-63-10] at 15; complete copies of all insurance policies that provided coverage, in whole or in part, for Plaintiffs' alleged losses or damages resulting from the fire, Cheeseman RFP No. 35 [DE-63-10] at 16, and Wagner RFP No. 82 [DE-63-9] at 27; documents "reflecting any negotiation, disagreement, and/or dispute between Plaintiff and any insurance company regarding the amount of the loss resulting from the Fire, including but not limited to emails, correspondence, notes, summaries, reports, and memos," Cheeseman RFP No. 42 [DE-63-10] at 17; "copies of each check, check stub, bank draft, release, and/or other document reflecting the amount of each payment made by any insurance company to, or for the benefit of, Plaintiff or any business owned by Plaintiff in connection with the Fire and/or the damages allegedly resulting from the Fire," Cheeseman RFP No. 44 [DE-63-10] at 18; documents reflecting

18

information that Plaintiffs provided to any insurance company regarding their alleged losses resulting from the fire, Wagner RFP. No. 83 [DE-63-9] at 27–28; documents reflecting any disagreement, dispute, and/or negotiation between Plaintiffs and any insurance company regarding the amount of any loss allegedly resulting from the fire, Wagner RFP No. 88 [DE-63-9] at 29; and "all documents reflecting all funds received by Plaintiff and/or Kathie McGregor from all GoFundMe fundraising accounts established as a result of the Fire," Wagner RFP No. 93 [DE-63-9] at 30. Plaintiffs answered with a variation of the following response:

> [If applicable, subject to the foregoing exceptions and without waiving same,] Plaintiff will supplement this response to the extent relevant [and/or to the extent they exist and are in Plaintiff's possession], and discoverable items are identified and obtained as the discovery process continues.

[DE-63-9] at 6–7, 9, 27–28, 30; [DE-63-10] at 5, 13, 15–18. Based on this response, the court is unable to deduce whether responsive documents do, in fact, exist; therefore, Plaintiffs shall supplement their answers by September 27, 2024, either by producing said documents or affirmatively stating that there are none in their possession.

### c. Plaintiffs' First Amended Responses to Thetford and DKM's RFPs

Thetford and DKM each propounded twenty-six identical RFPs to Wagner and Cheeseman, and Defendants contend that all of Plaintiffs' responses are deficient. Defs.' Mem. [DE-59] at 3. Plaintiffs' response to the instant motion does not address these RFPs or Defendants' perceived deficiencies, and in their August 29, 2024 notice to the court, Plaintiffs clarified that they continue to rely on their first amended responses and will supplement as needed. [DE-71] at 1.

The RFPs in this category broadly seek documents supporting Plaintiffs' allegations that Thetford and DKM were involved in designing, engineering, manufacturing, assembling, inspecting, testing, marketing, advertising, distributing, and/or selling the subject refrigerator.

[DE-59-6, -59-8]. Plaintiffs responded to each RFP by raising a litany of familiar boilerplate objections, including that Defendants' requests are vague and overbroad; "seek[] an expert opinion that Plaintiff is not qualified to give"; seek[] information in Defendants' possession, custody, or control"; and seek documents protected by the attorney-client privilege and/or work product doctrine. *Id.* Nonetheless, Plaintiffs appear to have responded notwithstanding their objections, once more appealing to the amorphous "Settlement Demand package submitted to Defendants on June 20, 2023," as well as their expert reports and discovery and documents produced in other litigation involving Norcold refrigerators. *Id.* For the reasons articulated more fully above, Plaintiffs are directed to supplement their answers by no later than September 27, 2024, so that Defendants and the court can better determine whether specific responsive documents exist and, if so, whether Plaintiffs are withholding any documents based on privilege.

### ii. Defendants' Motion for Entry of Protective Orders

Under the Federal Rules, "[a] party or any person from whom discovery is sought may move for a protective order," and "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "Where a protective order is sought, the moving party bears the burden of establishing good cause. This burden requires more than stereotyped and conclusory statements, but rather the movant must present a particular and specific demonstration of fact as to why a protective order should issue." *Taekman v. Unum Life Ins. Co. of Am.*, No. 1:22-CV-605, 2023 WL 4763724, at *4 (M.D.N.C. July 26, 2023) (citation omitted).

In the instant case, Defendants seek two protective orders related to the court's May 24, 2024 order on Plaintiffs' motions to compel: an order protecting the confidential and proprietary business information and documentation that Defendants will produce in general, and an order

reducing the scope of documents Defendants will produce in response to Plaintiffs' RFP Nos. 9, 42, and 46–48 in particular. Defs.' Mem. [DE-57] at 2–9. Defendants attached the declaration of Matthew Harris, Norcold's Senior Manager of Engineering & Continuous Improvement, in support, as well as the declaration of Defendants' counsel, Todd Foss, and a proposed protective order pertaining to the disclosure of confidential and proprietary business information and documentation. [DE-57-1 to -57-3]. Plaintiffs oppose entry of both orders. Pls.' Resp. [DE-60] at 2–5.

### 1. Order Protecting Defendants' Disclosure of Business and Proprietary Information and Documents

Plaintiffs do not contest Defendants' assertion that a protective order is necessary to protect Defendants' disclosure of business and proprietary information and documents. *Id.* at 2–3. Instead, Plaintiffs argue that Defendants' proposed protective order is "too restrictive in terms of who is allowed to have access to the documents and information designated as Confidential." *Id.* In support, Plaintiffs point to Section 6(d) of Defendants' proposed order, which provides that discovery designated confidential may be disclosed only to Qualified Persons, including

> any other person during the course of depositions in this lawsuit or oral or written examinations, provided that any such person was, at the time the document containing Confidential Information was prepared, a director, officer, or employee of the producing party, except that any such document or information shall not be left in the possession of the deponent.

*Id.*; [DE-57-2] at 5. Plaintiffs stress that this provision is problematic because

> [T]he Rule 30(b)(6) witnesses designated by Defendants and other material witnesses deposed by Plaintiffs, other than experts, may not have been a director, officer, or employee of Defendants as the time the Confidential Information was prepared. In this event, Plaintiffs would be prevented from conducting discovery regarding material elements of their case or at the least, Plaintiffs would be required to file a motion with the Court and have it heard, which takes time. This is particularly the case with the 1200 Series Norcold refrigerator at issue, which was designed and first sold many years ago.

Pls.' Resp. [DE-60] at 2. Plaintiffs also argue that the proposed order is improper because it prevents parties, i.e, Plaintiffs, from accessing information designated as confidential, and either requires information designated as confidential to be returned or requires counsel to provide a sworn verification that all confidential information was destroyed within ten days after the litigation has ended. *Id.* According to Plaintiffs, the court should enter their proposed protective order instead, which is the standing order for civil cases before United States District Judge Frank D. Whitney of the United States District Court for the Western District of North Carolina. *Id.*; [DE-60-1].

The court finds it significant that a protective order that is substantially identical to Defendants' proposed protective order was recently implemented in *Cohen v. Norcold*, 5:20-cv-00170-BO, at [DE-119], a case with comparable facts that included Norcold, Thetford, and DKM as defendants. Given this precedent and the confidentiality concerns articulated in Matthew Harris's declaration, the court in its discretion will enter Defendants' proposed order by separate order.

### 2. Order Reducing the Scope of Defendants' Document Production in Response to Plaintiffs' RFP Nos. 9, 42, and 46–48

In its May 24, 2024 order, the court described Plaintiffs' outstanding RFPs as follows:

> RFP No. 9 seeks copies of any complaint, petition, or similar notification that Norcold has received arising out of any event in which it is alleged a Series 1210 refrigerator caught fire and injured a person or property; [and] RFP Nos. 42 and 46–48 request documents, Incident Files, source data for Incident Logs, and source data for Incident Files pertaining to alleged Norcold refrigerator fires[.]

[DE-55] at 21–22. The court found that, given Norcold's extensive litigation history, it was appropriate to curtail the scope of these RFPs. *Id.* at 23. Accordingly, the court adopted the same approach it applied in *Cohen*, limiting discovery to claims allegedly involving a Norcold N6 Series, N8 Series, or 1200 Series refrigerator for which Norcold received notice during the three

years preceding the alleged incident in this case, i.e., from November 25, 2019, to November 25, 2022. *Id.*

Defendants now assert that the three-year limitation still imposes a disproportionate burden, as from November 25, 2019 to November 25, 2022, Norcold received notice of 273 incidents involving RVs that allegedly contained a Norcold N6 Series, N8 Series, or 1200 Series refrigerator. Defs.' Mem. [DE-57] at 6. Defendants' counsel, Todd Foss, states in his declaration that he reasonably estimates it will "require hundreds of hours of attorney time to review and prepare the 273 incident files for production, and production of the 273 incident files will total several thousand pages of documents." [DE-57-3] at 2–3. According to Defendants, a similar situation occurred in *Cohen*; there, the three-year discovery limitation still resulted in 555 incident files, and despite Norcold's efforts to locate, compile, review, and produce the files, Norcold was unable to do so prior to the court-ordered deadline. *Id.* at 3–4. Consequently, Defendants propose that the court should further limit the discovery window for the above-indicated RFPs to the one-year period preceding the date of the subject fire, or alternatively, permit Norcold to produce the 250 incident files previously produced in *Cohen* once a protective order has been entered to safeguard Norcold's business and proprietary information. Defs.' Mem. [DE-57] at 8.

Plaintiffs counter that in the age of electronic information and discovery, it is unclear why it would be difficult for Defendants to compile and produce the 273 incident files corresponding to the three-year period prior to the subject fire, or why Defendants would need to spend hundreds of hours doing so. Pls.' Resp. [DE-60] at 4–5. Plaintiffs also argue that the information they have requested is highly relevant and probative to Plaintiffs' claims for actual and punitive damages, and Defendants' proposal to substitute the *Cohen* document production is thus insufficient as

Plaintiffs have not seen that production and it would not include the more recent claims filed immediately prior to the date of the subject fire. *Id.*

Having considered the parties' arguments, the court in its discretion finds that a further time restriction on discovery is warranted under Fed. R. Civ. P. 26(b)(1), but not to the extent requested by Defendants. Accordingly, Defendants shall limit their response to Plaintiffs' RFP Nos. 9, 42, and 46–48 to the two years prior to the date of the subject fire.

### III. Conclusion

For the reasons stated above, Defendants' motion to compel, [DE-58], is allowed in part and denied in part; and Defendants' motion for entry of protective orders, [DE-56], is allowed. Defendants request for costs and fees is denied.

In light of the court's order, the parties will need more time to complete discovery. Accordingly, case deadlines are extended as follows: all discovery shall be completed by no later than **October 21, 2024,** and all potentially dispositive motions, except those relating to the admissibility of evidence of trial, shall be filed by no later than **November 21, 2024.**

SO ORDERED, the 13th day of September 2024.

Robert B. Jones, Jr.
United States Magistrate Judge

24